UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**George L. Russell, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

July 27, 2020

MEMORANDUM TO COUNSEL RE:   Cosmopolitan Incorporated v. PNC Bank,
National Association
Civil Action No. GLR-19-2744

Dear Counsel:

Pending before the Court is Defendant PNC Bank, National Association's ("PNC") Motion to Transfer Venue (ECF No. 8).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

Plaintiff Cosmopolitan Incorporated ("Cosmopolitan") is a Maryland-based prime contractor that provides construction and engineering services to the United States government for domestic and international projects. (Compl. ¶ 1, ECF No. 3). Cosmopolitan engaged ENGIE Gebaudetechnik GmbH ("ENGIE") as a subcontractor to renovate an embassy in Vienna, Austria. (Id. ¶ 4). As permitted by Austrian law, ENGIE demanded that Cosmopolitan deposit a substantial down payment before ENGIE commenced performance under the subcontract. (Id. ¶ 5). As security for the down payment, Raiffeisen Bank International AG ("Raiffeisen") issued Down Payment Guarantee No. 617.0941 (the "Guarantee") on January 18, 2018 on ENGIE's behalf in the amount of €296,400.00. (Id. ¶ 6).

The terms of the Guarantee outlined the procedure required to make a valid demand on the Guarantee. (Id. ¶ 7). Any valid demand had to be transmitted through Cosmopolitan's bank, and that bank was required to confirm that the signatures on the demand were legally binding on Cosmopolitan. (Id.). Further, any demand on the Guarantee had to be made before April 30, 2018. (Id. ¶ 8).

In early 2018, ENGIE walked off the project and refused to complete the work required under the subcontract. (Id. ¶ 9). Thereafter, Cosmopolitan contacted PNC to obtain assistance with making a demand on the Guarantee. (Id. ¶ 10). Cosmopolitan had a preexisting banking relationship with PNC, which was governed by a service agreement (the "Agreement"). (Id. ¶ 19).

By April 6, 2018, Cosmopolitan provided PNC with the required paperwork, including a copy of the Guarantee and documents demonstrating that Cosmopolitan timely paid the down

---

[1] Also pending before the Court is PNC's Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 9). Because the Court will grant the Motion to Transfer Venue, the Court declines to rule on PNC's Motion to Dismiss.

payment to ENGIE. (Id. ¶¶ 10–11). Cosmopolitan alleges that PNC waited until April 20, 2018 to send the demand to Raiffeisen and failed to confirm that the signatures on Cosmopolitan's demand were legally binding, as required under the terms of the Guarantee. (Id. ¶ 12). On April 27, 2018, Raiffeisen advised PNC that the demand did not comply with the Guarantee's requirements; however, PNC did nothing to correct the deficiencies. (Id. ¶ 13). As a result, Raiffeisen refused to honor Cosmopolitan's April 20, 2018 demand, and subsequent demands were denied because they occurred after the Guarantee's April 30, 2018 expiration date. (Id. ¶¶ 14–15).

On August 14, 2019, Cosmopolitan sued PNC in the Circuit Court for Howard County, Maryland. (ECF Nos. 1, 3). PNC removed the case to the United States District Court for the District of Maryland on September 17, 2019. (ECF No. 1). The Complaint alleges breach of contract (Count I) and detrimental reliance (Count II). (Compl. ¶¶ 18–39).[2] Cosmopolitan seeks $358,007.00 in damages. (Id. at 6).

On September 24, 2019, PNC filed a Motion to Transfer Venue and a Motion to Dismiss (ECF Nos. 8, 9). On October 8, 2019, Cosmopolitan filed an Opposition to each motion. (ECF Nos. 12, 13). PNC filed Replies in support of its motions on October 22, 2019. (ECF Nos. 16, 17).

PNC seeks to transfer this case to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), asserting that the parties contracted in advance to litigate disputes in that forum. (See Def.'s Mem. Supp. Mot. Transfer Venue ["Def.'s Mot. Transfer"] at 1, ECF No. 8-1; see also Compl. Ex. 1 ["Agreement"] at 20, ECF No. 3-1). The Court agrees.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (2018). The Supreme Court has held that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," unless there exists "extraordinary circumstances unrelated to the convenience of the parties." Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 62 (2013). Outside of exceptional cases, "a valid forum-selection clause [should be] given controlling weight." Id. at 63. Further, the plaintiff's choice of forum is given no weight, and the burden shifts to the plaintiff, as the party defying the forum-selection clause, to establish that transfer is unwarranted. Id. Only public-interest factors may weigh against transfer, but these factors "rarely defeat a transfer motion." Id. at 64. Because a forum-selection clause may have been a critical factor to the parties' negotiations and agreement, "'the interest of justice' is served by holding parties to their bargain." Id. at 66.

Forum-selection clauses may be mandatory or permissive. A mandatory forum-selection clause "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum." Davis Media Grp., Inc. v. Best W. Int'l, Inc., 302 F.Supp.2d 464, 467 (D.Md. 2004) (quoting Koch v. Am. Online, Inc., 139 F.Supp.2d 690, 693 (D.Md. 2000)). In comparison, a

---

[2] On October 10, 2019, Cosmopolitan voluntarily dismissed its breach of contract claim. (See ECF Nos. 14, 15).

permissive forum-selection clause "permits jurisdiction in the selected forum without 'precluding it elsewhere.'" Id. The United States Court of Appeals for the Fourth Circuit has explained that an agreement containing a forum-selection clause will not be interpreted as mandatory unless "it contains specific language of exclusion." IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007) (interpreting the forum-selection clause at issue as permissive because the clause contained language that the parties "shall be free to" pursue their rights in Virginia state courts, thus permitting jurisdiction in state court but not prohibiting jurisdiction in federal court).

The forum-selection clause at issue here is mandatory. The Agreement contains a "Governing Law and Venue" provision, which provides:

> This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to principles of conflict of laws, and, to the extent applicable, the laws of the United States. You hereby irrevocably consent and agree that any action, suit or proceeding resulting from, arising out of or related to this Agreement shall be instituted in any state or federal court in the Commonwealth of Pennsylvania (including the courts of the United States of America for the Western District of Pennsylvania) and hereby waive any objection which you may now or hereafter have to the laying of the venue of any such action, suit or proceeding in any such jurisdiction, on the basis of a more convenient forum or otherwise.

(Agreement at 20) (emphasis added). This Court has determined that language expressing that any dispute between parties be litigated in a specific court is equivalent to stating that all disputes shall be resolved in that forum. See Invictus Aerospace Grp., LLC, v. Point Blank Enters., Inc., No. ELH-19-2983, 2020 WL 2085464, at *13 (D.Md. Apr. 30, 2020). Here, the language in the forum-selection clause makes clear that the parties are required to bring any legal proceeding "resulting from, arising out of or related to" the Agreement in Pennsylvania's state or federal courts. (Agreement at 20). As such, the Court holds that the forum-selection clause is mandatory.

Such clauses "are prima facie valid" and enforceable unless "shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). A forum selection clause is unreasonable if: (1) it was "induced by fraud or over-reaching;" (2) the opposing party "'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum;" (3) "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy;" or (4) "enforcement would contravene a strong public policy of the forum state." Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (quoting Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)). Cosmopolitan has failed to meet this high standard.

Cosmopolitan does not argue that enforcement of the forum-selection clause would be unreasonable. Instead, Cosmopolitan notes that PNC denies the existence of a contract for the services that are the subject of this litigation and argues that, if there is no contractual agreement for services, then PNC cannot rely on the Agreement's forum-selection clause. The Court is not

persuaded.

Certainly, if no contract exists, a plaintiff cannot be bound by a forum-selection clause. However, when evaluating a motion to transfer, courts in the Fourth Circuit accept the factual allegations in the plaintiff's complaint as true. See, e.g., Dearybury Oil & Gas, Inc. v. Lykins Cos., No. 7:16-0923-MGL, 2017 WL 713689, at *2–3 (D.S.C. Feb. 23, 2017); Celgard, LLC v. LG Chem, Ltd., No. 3:14-cv-0043, 2015 WL 2412467, at *6 (W.D.N.C. May 21, 2015). In its Complaint, Cosmopolitan sets forth allegations which, if true, establish that a contract was formed between the parties for the services that are the subject of this litigation. Indeed, Cosmopolitan expressly alleges that the parties had an agreement in which PNC was to provide the banking services at issue, and that PNC failed to provide those services. (Compl. ¶ 38). Although Count II is a claim for detrimental reliance, non-contractual theories alone are not enough to avoid a forum-selection clause "if the claims asserted arise out of the contractual relation and implicate the contract's terms." Belfiore v. Summit Fed. Credit Union, 452 F.Supp.2d 629, 632 (D.Md. 2006) (quoting Crescent Int'l, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988)).

Here, the Court finds that the claim for detrimental reliance arises out of the contractual commercial banking relationship that Cosmopolitan had with PNC and implicates the Agreement's terms, as Cosmopolitan alleges that it detrimentally relied upon PNC to provide banking services governed by the parties' Agreement.

The Court's analysis is not altered by the fact that Cosmopolitan dismissed its breach of contract claim. In Belfiore, the defendant moved to transfer the case to the forum identified in the forum-selection clause; the plaintiff dismissed his breach of contract claim and argued that the case was not related to a contractual agreement. 452 F.Supp.2d at 631–62. The court rejected the plaintiff's argument, observing that "[t]he host of non-contract claims he now asserts are little more than a desperate attempt to plead around the choice of forum clause. Such a clause however, cannot be defeated by 'artful pleading.'" Id. at 632. Similarly, Cosmopolitan cannot circumvent the forum-selection clause at issue here by dismissing its breach of contract claim.

Lastly, the Court concludes that Cosmopolitan's claim against PNC falls within the scope of the forum-selection clause. Again, the clause applies to "any action, suit or proceeding resulting from, arising out of or related to this Agreement." (Agreement at 20). There are no exceptions to this broad mandate. Cosmopolitan's claim that it determinately relied upon PNC to transmit a timely demand on the Guarantee falls squarely within the scope of the forum-selection clause.

For the foregoing reasons, Defendant's Motion to Transfer Venue (ECF No. 8) is GRANTED. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly and to transfer this case to the United States District Court for the Western District of Pennsylvania.

Very truly yours,

/s/
George L. Russell, III
United States District Judge